53 CCPA

**Application of John T. RAUEN.**

**Patent Appeal No. 7532.**

United States Court of Customs and Patent Appeals.

Feb. 24, 1966.

Charles R. McKinley, Detroit, Mich., for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This appeal is from a decision of the Board of Appeals affirming the rejection of claims 1–6 and 8–10, the only claims remaining in application serial No. 87,-979, filed February 8, 1961 for "Tube Coupling." The issue is obviousness under 35 U.S.C. § 103.

The invention relates to an improvement in tube couplings of the "Ermeto" type. By reference to appellant's Figures 2–4, the conventional "Ermeto"

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge Worley, pursuant to provisions of Section 294(d), Title 28, United States Code.

126

coupling can be seen as comprising three cooperating parts:

1.) a tube connecting body, 10, having flared mouths 14, 16 and shoulders 18, 20 to receive the ends of tubes (only a single tube, 12, is shown), 2.) a nut 24, and 3.) a sleeve 22 which bows when the nut is threaded on the connecting body so that the hardened, sharp inner edge 30 is forced into engagement with the tube, thereby cutting a seat to make an adequate high-pressure seal.

Appellant describes the problem faced thus:

> The "ermeto" coupling while enjoying wide acclaim may be defective if not assembled properly. If the nut member is turned too far, the sleeve will bite too deeply into the tube. The resulting damage may cause leakage and will ultimately shorten the life of the tube as the tube will be less resistant to vibration. If the nut member is not turned far enough, the sleeve will not bite deep enough into the tube to result in a proper seal and retention of the tube within the fitting assembly.

Another aspect of that problem, arising upon tightening or reassembly of the coupling, is described in the specification, and is also evidenced by instructions that accompany two brands of the conventional "Ermeto" couplings, which instructions were made of record during the prosecution. According to those instructions, in catalogues of the Parker Aircraft Co. and Weatherhead Co., it is the practice, upon initial tightening, to advance the nut a certain amount after presetting, e. g., $1\frac{3}{16}$ to 2 turns beyond finger tight. Similarly, upon reassembling, the practice is to advance the nut a certain amount beyond its previous setting, e. g. approximately $\frac{1}{8}$th turn.

That inherent inaccuracy in tightening results in damage to the tube as observed by leakage and a short life under vibrational stress. Appellant has solved those problems due to the above construction and method of using the conventional "Ermeto" coupling by providing an integral stop on the nut, element 34 (Fig. 2 above), or by providing an equivalent separate stop ring 36 (Figs. 3 and 4 above). The stop is a fool-proof guide to accurate tightening; it eliminates the necessity of any presetting to finger-tightness or subsequent counting of turns of the nut. Further, appellant has discovered that "advancement" upon reassembly, once thought necessary, is not a prerequisite to a tight coupling. Thus the stop also ensures proper reassembly.

Claim 1 is illustrative as covering both the integral and separate stop means:

1. A tube coupling of the character described comprising first means adapted to receive a tube,

said first means having an external shoulder portion, second means adapted to receive said tube and engage said first means, resilient, metallic third means, said third means being adapted toward one end thereof to clamp and support said tube in said coupling and being further adapted toward the other end thereof to bite into said tube to support said tube in said coupling and seal said tube and said third means against fluid leakage on deformation of said third means by relative movement of said first and second means when in the process of assembly and fourth means between said first and second means adapted to contact the external shoulder portion of said first means to limit said relative movement thereof and deformation of said third means to a predetermined optimum amount and to visually indi-

cate that said third means has been deformed a predetermined amount.

The remaining claims are either similar, but phrased in alternate language, or are specific to the integral or separate stop means. Since both appellant and the Patent Office treat the claims as a group, and we see no compelling reason for doing otherwise, we shall also treat them as standing or falling together.

The references relied on are:

| | | | |
|---|---|---|---|
| Kreidel | 2,139,413 | Dec. | 6, 1938 |
| Wiltse | 2,226,039 | Dec. | 24, 1940 |
| Stranberg | 2,511,134 | June | 13, 1950 |
| Zeller | 3,097,870 | July | 16, 1963 |

Kreidel and Zeller admittedly show the conventional "Ermeto" coupling described above in the introduction.

Wiltse provides a stop 28 on a nut in a fluid line coupling as shown in his Fig. 2 here reproduced:

FIG. 2.

Wiltse employs a rubber sealing ring C which is forced into engagement with the tube by the nut or third section 13 acting on second section 12. That pressure causes an indentation 31 in the tube and the stop 28 limits the movement of the parts so that the squeezing pressure and depth of indentation can be predetermined and controlled.

We find it unnecessary to refer to Stranberg.

The claims on appeal were rejected on Zeller or Kreidel in view of Wiltse. The

board agreed with the examiner's view that:

\* \* \* persons of ordinary skill in the art would have found it obvious to apply the stop shoulder teachings of Wiltse to either the Zeller or Kreidel combinations as of the time of appellant's entry into the field. The Wiltse teachings are noted as providing such stop in an analogous combination to limit and indicate the proper degree of clamping and deforming action in the tightening of a coupling. \* \* \*

Upon careful study of the record and appellant's arguments we are constrained to agree with that view. In our opinion Wiltse is convincing evidence that it was an obvious expedient to provide a stop member to assure an optimum sealed relationship of the parts in a fluid line coupling. As the board noted, "Wiltse adequately teaches the stop relationship of an abutting shoulder and sleeve * * * as a means to determine the seal condition of a fluid coupling."

We do not agree with the contention that the suggestion to combine the references has come from appellant's specification rather than from the references. It is true, as appellant notes, that "it is no answer to say that the Ermeto fitting is old, stops *per se* are old, and therefore it is obvious to apply a stop to the Ermeto fitting." But the reference relied on to show the stop, Wiltse, does not show the stop alone. Rather, it shows a stop as part of the very type of combination, a tube coupling, that is the subject of the instant invention. Thus the concept of using a stop in a tube coupling is not new, albeit the particular structure is. Further, the purpose of the stop is clearly taught by Wiltse:

> Another object is to provide a connection wherein the cooperating parts of the fitting have means for definitely limiting the squeezing action thereof against the resilient member so that upon adjustment of one of said cooperating parts a predetermined distance relative to the other, the depth of indentation made in the tubing by the resilient member will correspondingly be predetermined.

> * * * * * *

> * * * Engagement of the annular projection 28 of the third section 13 with the polygonal body 14 of the first section 11 will limit the squeezing pressure on the sealing ring C so that the depth of the indentation 31 formed by the squeezing action will be predetermined and controlled. This limiting feature is important

because it insures a definite constriction upon the tube.

■ It is that concept of using a stop in a tube coupling in Wiltse which would of itself suggest the claimed combination to one of ordinary skill in the art on viewing the stop-free Kreidel "Ermeto" coupling. The references taken together make it obvious to combine the several elements of the coupling as claimed by appellant. In re Billingsley, 279 F.2d 689, 47 CCPA 1108. It is no answer that the references *in so many words* do not direct one to make the combination.

■■ We also find unconvincing an argument based on commercial practices with respect to "Ermeto" couplings. Appellant's position is:

> * * * It is important then to consider the teachings of Kreidel and Zeller who disclose Ermeto type fittings and the knowledge and commercial practices of the manufacturers of the commercial fittings and their recommendations for reassembly of the fittings in commercial use.

> * * * * * *

> It is thus clearly apparent [from an earlier Kreidel patent of record] that Kreidel was familiar with the use of a stop in a tube coupling to limit tightening of the nut. It is significant, however, that when Kreidel invented the Ermeto fitting shown in his patent 2,139,413 he did not incorporate a stop or any other element therein to in any way restrict tightening of the nut on the connecting body and for the reason that Kreidel, like Weatherhead and Parker, the manufacturers of the commercial fitting, thought that it was necessary to tighten the nut a little bit more upon each reassembly of the coupling in order to obtain a good seal. Kreidel's earlier patent is therefore clear evidence of the fact that those skilled in the art did not find it obvious to add a stop, or more correctly a gauging element, to the Ermeto fitting to assure a

good reassembly of the fitting. Kreidel eliminated the stop shown in his earlier patent from the Ermeto fitting because he like all the others skilled in the art, including the manufacturers, thought it absolutely necessary to allow free movement of the nut on the connecting body so that a deeper bite could be taken on the tube each time the coupling was reassembled. Appellant's concept is therefore clearly contrary to the teachings of Kreidel and the manufacturers and users of the Ermeto fitting, and cannot be said to be obvious under these circumstances.

\*  \*  \*  \*  \*  \*

\*  \*  \*  While the Patent Office often does not have the benefit of actual commercial practices to guide it in making a determination under Section 103, such commercial practices are of record in the present case and they clearly refute any contention that it would be obvious to limit movement of the nut in an Ermeto fitting to insure proper reassembly of the fitting.  \*  \*  \*

While we agree that it is important to consider the commercial practices of record, we do not find them to demonstrate nonobviousness in the present case. The practices are in reference to the "Ermeto" fittings alone, and *do* show them to be satisfactory although the present invention is advantageous thereover. The commercial practice does not show that Kreidel, the personnel of the companies making the fittings, or one of ordinary skill in the art in fact rejected stops, much less considered them. There is an inference to that effect but we find it insufficient to rebut the clarity of the combined teachings of the art of record. Cf. In re Cline, 345 F.2d 847, 52 CCPA 1404.

For the above reasons the decision of the board is affirmed.

Affirmed.

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief